# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| A.H., an individual, : | |
| : | Case No. 2:24-cv-3113 |
| Plaintiff, : | |
| : | Judge Algenon L. Marbley |
| v. : | |
| : | Magistrate Judge Elizabeth P. Deavers |
| RED ROOFS INNS, INC., *et al*., : | |
| Defendants. : | |

## OPINION & ORDER

This matter comes before this Court on Defendants Red Roof Inns, Inc. and Red Roof Franchising, LLC's ("Defendants") Motion to Dismiss (ECF No. 15) and Plaintiff A.H.'s Motion to File a Sur-Reply (ECF No. 24). For the reasons that follow, Defendants' Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART**. (ECF No. 15). Specifically, Plaintiff's CAVRA claims are hereby **dismissed** as time-barred; Defendants' motion to dismiss is **denied** in all other respects. Additionally, Plaintiff's Motion to File a Sur-Reply (ECF No. 24) is **GRANTED.**

## I. BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a) and the Child Abuse Victim's Rights Act ("CAVRA"), 18 U.S.C. § 2255. Plaintiff A.H., a resident of Michigan, alleges that she was trafficked for sex from July to September 2012, when she was fifteen years old at two Red Roof Inns located in Michigan. (ECF No. 1 ¶¶ 20, 45, 50). Plaintiff seeks to hold Defendants Red Roof Inns, Inc. and Red Roof Franchising, LLC liable under the TVPRA and the Child Abuse Victim's Rights Act, 18 U.S.C. § 2255. (*Id.* at ¶ 19). Plaintiff commenced this action on June 4, 2024. (ECF No. 1). On October 21, 2024, Defendants filed a Motion to Dismiss. (ECF No. 15). Plaintiff has responded (ECF No.

21), and Defendants replied. (ECF No. 22). Plaintiff then moved to file a sur-reply (ECF No. 24), to which Defendants responded (ECF No. 27). These motions are now ripe for review.

## II. LEGAL STANDARD

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F. 3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F. 3d 430, 434 (6th Cir. 2008). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*.

## III. LAW & ANALYSIS

Defendants move to dismiss Plaintiff's CAVRA and TVPRA claims. (*See generally* ECF No. 15). As to CAVRA, Defendants argue that Plaintiff's claims are barred by the six-year statute of limitations, citing this Court's holding in *E.C. v. Choice Hotels Int'l, Inc.*, 2024 WL 1142162 (S.D. Ohio Mar. 15, 2024).[1] Defendants also argue that Plaintiff's CAVRA claim is insufficiently pled under Fed. R. Civ. P. 12(b)(6). As to the TVPRA, Defendants argue that Plaintiff does not allege a plausible beneficiary claim under Section 1595(a) or a vicarious liability claim.

---

[1] To address Defendants' reliance on *E.C.*, Plaintiff moved to file a sur-reply. (*See generally* ECF No. ECF No. 24). Because the information in the sur-reply "provides the Court with additional helpful information on issues in dispute," Plaintiff's motion for leave to file a sur-reply is **GRANTED.** *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F. Supp. 971, 974 (S.D. Ohio 1993).

2

### A. Application of CAVRA's Statute of Limitations

The Child Abuse Victims Rights Act, 18 U.S.C. § 2255(a) ("CAVRA") "requires that a person be a minor when she is the victim of a sex crime." *Doe v. Boland*, 698 F.3d 877, 881 (6th Cir. 2012). A.H. alleges that she was first trafficked at Defendants' properties when she was fifteen, in July and September of 2012. Citing the 2006 version of CAVRA, effective through March 2013, Defendants argue that Plaintiff's CAVRA claim is subject to the six-year statute of limitations. (ECF No. 15 at 6). Plaintiff responds that, because she did not reach the age of majority until 2015, the later version of CAVRA—which carries a 10-year statute of limitations—applies. (ECF No. 21 at 15–16).

As a preliminary matter, the Sixth Circuit has recognized that Rule 12(b)(6) is "generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations," unless the allegations affirmatively show a claim is time-barred. *Cataldo v. United States Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). This is because the statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and a plaintiff "generally need not plead the lack of affirmative defenses to state a valid claim." *Cataldo*, 676 F.3d at 547 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). But where "the allegations in the complaint affirmatively show that the claim is time-barred," dismissal under Rule 12(b)(6) is appropriate. *Id.* (citing *Jones*, 549 U.S. at 215); *see Father Flanagan's Boys Home v. Donlon*, 449 F. Supp. 3d 739, 743 (S.D. Ohio 2020) ("A motion to dismiss based on the statute of limitations . . . can be granted only where the defense appears valid from the face of the Complaint alone.").

Defendants argue that Plaintiff's CAVRA claims are time-barred under the 2006 version of the statute, which was in force at the time that A.H. was trafficked as a minor in 2012. (ECF

3

No. 15 at 6). That version of CAVRA provides that "[a]ny action commenced under this section shall be barred unless the complaint is filed within six years after the right of action first accrues or in the case of a person under a legal disability, not later than three years after the disability." 18 U.S.C. § 2255 (2006). Plaintiff, on the other hand, argues that 10-year statute of limitations under the 2013 version of CAVRA—which was in force when the plaintiff reached the age of majority in 2015—applies. *See* 18 U.S.C. § 2255 (2013).

In *E.C.*, this Court considered which statute of limitations applies to CAVRA claims brought by a plaintiff alleging that she was trafficked as a minor from 2009 through 2014 and reached the age of majority in 2010. *E.C. v. Choice Hotels Int'l, Inc.*, 2024 WL 1142162 (S.D. Ohio Mar. 15, 2024). This Court concluded that Plaintiff's "cause of action accrued—at the latest—in October 2010, when the six-year statute of limitations was in force," reasoning that "CAVRA's text contemplates that rights of action may accrue while a person is under legal disability—such as minority—and makes a specific concession of up to three extra years to file past the end of the disability." *Id.* at *2. The difference between E.C. and A.H., importantly, is that E.C. reached the age of majority during the alleged trafficking. Here, Plaintiff only reached the age of majority two years after the trafficking occurred—in 2015. Plaintiff therefore had until 2018 to bring her CAVRA claims.

As this Court explained in *E.C.*, "an increased statute of limitations" through subsequent CAVRA legislation cannot "be used in order to revive an untimely claim 'absent clear congressional intent to the contrary.'" 2024 WL 1142162 at *2 (quoting *Doe v. Schneider*, 2013 WL 5429229, at *5 n.8 (E.D. Pa. Sept. 30, 2013)). Since "Congress has not unambiguously

4

expressed intent for CAVRA's increased statute of limitations to revive previously time-barred claims," this Court "will apply the six-year statute of limitations in [its] analysis." *Id.*

Even if this Court were equitably to toll the statute of limitations between when Plaintiff's cause of action accrued and when she reached the age of majority in 2015, the six-year statute of limitations in effect in 2012 would still apply. "Equitable tolling pauses the appropriate limitations period during the tolling event, *Taylor v. Palmer*, 623 F. App'x 783, 785 (6th Cir. 2015), it does not alter the presumption that statutes of limitations do not apply retroactively." *E.C.*, 2024 WL 1142162 at *2. Six years after 2015 is 2021. Plaintiff did not bring her claims until 2024. As a result, her CAVRA claims are time-barred. *E.C.*, 2024 WL 1142162 at *2.

### B. Sufficiency of TVPRA Claims

RRI Defendants also challenge the sufficiency of Plaintiff's allegations to state a plausible claim for liability under the TVPRA's civil provision, 18 U.S.C. § 1595. That provision provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). As the statutory text makes clear, Section 1595 creates two kinds of civil liability: perpetrator liability and beneficiary (or participant) liability. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 552–53 (7th Cir. 2023). To establish a "violation of this chapter" under Section 1595(a), sex trafficking victims look to 18 U.S.C. § 1591, the provision of the TVPRA that sets forth criminal penalties for sex trafficking. Section 1591 provides:

5

>    (a) Whoever knowingly—
>
>    (1) in or affecting interstate or foreign commerce, ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
>    (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
>    knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

Plaintiff seeks to hold RRI Defendants directly and vicariously liable for TVPRA violations. In their motion to dismiss, Defendants only challenge the sufficiency of Plaintiff's allegations with respect to Plaintiff's beneficiary and vicarious claims. (*See* ECF No. 15 at 8 & n.1).

*1. Beneficiary Liability*

To survive dismissal on her beneficiary claim, Plaintiff must plausibly allege that: (1) RRI Defendants "knowingly benefitted, financially or by receiving anything of value"; (2) from participating in a venture; [and] (3) that they "knew or should have known [that the venture] engaged in an act in violation of [the TVPRA]." § 1595(a). As this Court noted in *Doe*, "a plaintiff may satisfy these elements by showing that 'defendant's own acts, omissions, and state of mind establish each element.'" *See Doe v. Best W. Int'l, Inc.*, No. 2:23-CV-3459, 2024 WL 3759761, at

*4 (S.D. Ohio Aug. 12, 2024) (quoting *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021)).

### a. Knowing Benefit

The "knowing benefit" element merely requires that RRI Defendants knowingly receive a financial benefit, not that RRI Defendants have actual knowledge of an illicit venture. *A.C.*, 2020 WL 3256261, at *4. As this Court found in *M.A.*, "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965; *accord H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019); *see also J.L.*, 521 F. Supp. 3d at 1061 (concluding that allegations that a hotel defendant received a percentage of room revenue where trafficking occurred, was sufficient to meet the knowing benefit element under 18 U.S.C. § 1595(a)); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1137 (D. Colo. 2019) (finding that the forced labor provision of § 1589(b) does not "require[ ] the party to benefit from the [forced] labor or services for liability to attach").

Because Plaintiff alleges that RRI Defendants rented rooms to her traffickers and benefited financially from those rentals (ECF No. 1 ¶¶ 86, 90, 108, 109, 116), Plaintiff's allegations are enough to satisfy the element of "knowing benefit" under Section 1595(a).

### b. "Participated *in a venture*"

Plaintiff has also alleged sufficient facts to establish that Defendants' conduct constitutes "participation in a venture" under Section 1595(a). As this Court held in *M.A.*, Defendants need not have actual knowledge of the sex trafficking or perform an overt act to have "participated" in a sex trafficking venture for TVPRA liability to attach; "otherwise the 'should have known'

7

language in § 1595(a) would be meaningless." 425 F. Supp. 3d at 971; *see also G.G.*, 76 F.4th 544 (participation under TVPRA's civil remedy provision does not require direct participation, criminal violation of TVPRA, or actual knowledge of criminal wrongdoing); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 937 (D. Or. 2020) (agreeing with this Court's reasoning in *M.A.* that a plaintiff is "not required to allege actual knowledge of a sex trafficking venture or the performance of an overt act in order to sufficiently plead the 'participation in a venture' element of her § 1595 claim"). Plaintiff, however, "must allege at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *See M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 288–89 (D. Conn. 2013)).

Plaintiff's allegations here—that RRI Defendants received "royalty payments, licensing fees, and percentages of the gross room revenue generated by the hotel operations, including rates charged through rooms where A.H. was trafficked" from the Grand Rapids RRI and Muskegon RRI (ECF No. 1 ¶ 27) satisfies the "participation in a venture" element. Resisting this conclusion, RRI Defendants argue that "ordinary business dealings . . . with patrons" cannot constitute participation in a venture that violates the TVPRA. (ECF No. 15 at 11). In support, they cite the Eleventh Circuit's decisions in *Doe #1 v. Red Roof Inns, Inc.*, 21 F. 4th 714 (11th Cir. 2021) and *K. H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024). In *Doe #1*, the Eleventh Circuit held that the Section 1595(a) beneficiary claims against hotel franchisors failed because the plaintiffs "provided no plausible allegations that the franchisors took part in the common undertaking of *sex trafficking*." *Doe #1*, 21 F. 4th at 721 (emphasis added). According to the

8

Eleventh Circuit, the Does' allegations "that the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels" were insufficient because "observing something is not the same as participating in it." *Id*. *Riti* likewise rejected a similar claim, reiterating that "allegations of financial benefit alone are not sufficient to establish that the defendant participated in a *sex trafficking* venture and observing signs of sex trafficking is not the same as participating in it." *Riti*, 2024 WL 505063, at *4 (emphasis added).

But both *Doe* and *Riti* analyzed plaintiffs' claims that defendants participated in a *sex-trafficking* venture, not the commercial ventures that Plaintiff pleads here. (*See e.g.*, ECF No. 1 ¶ 27 ("Red Roof knowingly benefited, or received something of value, from its commercial business ventures . . . ."). In *Doe #1*, the Eleventh Circuit recognized that its analysis may have been different if the plaintiffs had pled the hotel franchisor defendants had participated in commercial ventures operating the hotel rather than alleging that they participated in sex-trafficking ventures. 21 F.4th at 727. The *Doe #1* plaintiffs, however, had not done so and had refused an opportunity to amend. *Id*. Thus, neither *Doe #1* nor *Riti* applies to the commercial ventures that Plaintiff pleads here. *See C.T.*, 2023 WL 3510879, at *4 ("Since this case finds itself in waters the Eleventh Circuit declined to wade in, *Doe #1* is not determinative."); *A.R. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-CV-04935, 2022 WL 17741054, at *7 (S.D. Ohio Dec. 16, 2022) (because plaintiff "alleges that Defendant 'participated in a commercial business venture under § 1595[ ] by receiving royalties from Plaintiff's traffickers renting rooms at their branded locations,'" the Eleventh Circuit's decision in *Doe #1* "is not controlling"). Indeed, both the Eleventh and Seventh Circuits have recognized that the relevant "venture" under Section 1595 need not be "specifically a sex

trafficking venture" and can instead be a "commercial venture" like running or expanding a business that facilitates sex trafficking. *See G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023) (citing *Doe #1*, 21 F.4th at 727).

Because Plaintiff's allegations raise a plausible inference that RRI Defendants participated in hotel-operating commercial ventures that rented rooms to people that RRI Defendants should have known were engaged in sex trafficking, the Complaint satisfies the "participation in a venture" requirement. *See M.A.*, 425 F. Supp. 3d at 968 (defendant who continues an ongoing business relationship with traffickers, including by continuing to rent rooms to them, after the defendant should know that the business relationship facilitates trafficking, participates in a §1595(a) venture); *A.R.*, 2022 WL 17741054, at *7 (recognizing defendant's "business venture with the franchisee hotels" as sufficient to show participation in a venture under Section 1595); *T.P.*, 2022 WL 17363234, at *11 (recognizing this theory of venture).

c. "Knew or should have known"

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture was engaged in sex trafficking. RRI Defendants need not have actual knowledge of trafficking crimes for beneficiary liability to attach, as the "should have known" language in Section 1595(a) permits constructive knowledge. *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles*, 937 F. Supp. 2d at 288–89). RRI Defendants argue that Plaintiff cannot satisfy this element because Plaintiff fails to connect the "open and obvious" of human trafficking to Defendants. (ECF No. 15 at 14). They also note that "Plaintiff focuses her allegations on the alleged awareness in the hospitality industry of sex trafficking in general," which is insufficient. (*Id.* at 14).

Plaintiff, however, alleges other facts, including that it was "readily apparent" to hotel staff "that A.H. was under the control of her trafficker," who was "significantly older than her" (*id.* ¶ 55); that "hotel staff knew Plaintiff's trafficker by name and was on friendly terms with the trafficker" (*id.* ¶ 59); that "there was constant foot traffic and loud sounds of abuse coming from the room"; that staff witnessed A.H. and the "johns" come into the main entrance and to A.H.'s room; and that staff observed "A.H.'s trafficker being violent with her in public areas of the hotels." (*Id.* ¶ 59). Further, each stay at the Grand Rapids RRI and Muskegon RRI, according to Plaintiff, "resulted in several consistent red flags, including, but not limited to: Requesting rooms away from other guests, Obvious signs of illegal drug use; Unusually large numbers of used condoms left in the trash; Unusually large number of male visitors going in and out of A.H.'s rooms; Physical abuse in public spaces; Visible signs of prior/private physical abuse; Women wearing clothing inappropriate for the weather; and Living out of the hotel room." (*Id.* ¶ 60).

Plaintiff also alleges sufficient facts to impute the constructive knowledge of on-the-ground hotel staff to RRI Defendants by way of direct, day-to-day control through, among other things, RRI Defendants' monitoring of the premises; imposing robust reporting and recordkeeping requirements; controlling the systems that franchised hotels must use to access customer data, reservations, and other information; mandating specific training for the properties and hotel management at franchised hotels; mandating on-site training for hotel staff at franchised hotels; controlling channels for guests to report complaints; and retaining the ability to require all franchised hotels to participate in centralized operational services. (*See* ECF No. 1 ¶¶ 99–104).

This Court has previously held that a defendant's notice of "the prevalence of sex trafficking generally at their hotels," the failure "to take adequate steps to train staff in order to

11

prevent its occurrence," and signs that "should have alerted staff to [Plaintiff's] situation" meet the constructive knowledge requirement. *M.A.,* 425 F. Supp. 3d at 968.

In the context of the other facts alleged in the complaint, Plaintiff's allegations are sufficient, at the motion to dismiss stage, to suggest that RRI staff should have known that Plaintiff was being sex trafficked. This Court therefore **DENIES** RRI Defendants' motion to dismiss Plaintiff's beneficiary claim. (ECF No. 15).

*2. Indirect Liability*

RRI Defendants also challenge the sufficiency of Plaintiff's allegations to support an agency relationship. "To succeed under an agency theory, Plaintiff must show both: (1) that Defendant and its franchisee[] were in an agency relationship; and (2) that [the franchisee] hotel[] or hotel staff are plausibly liable under § 1595(a)." *A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 803 (S.D. Ohio 2024), *partially amended on reconsideration on other grounds sub nom. In re Hotel TVPRA Litig.*, No. 2:21-CV-4933, 2024 WL 4945135 (S.D. Ohio Dec. 3, 2024).

The Sixth Circuit looks to the Restatement of Agency when applying "federal common law principles of agency." *See Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 586 (S.D. Ohio 2016). An agency relationship exists when a principal "manifests assent" to an agent "that the agent shall act on the principal's behalf and subject to the *principal's* control, and the agent manifests assent or otherwise consents so to act." *See* Restatement (Third) of Agency, § 1.01 (2006) (emphasis added). A defining element of agency "is the principal's right to control the agent's actions," such as "[t]he power to give interim instructions." Restatement (Third) of Agency § 1.01 cmt. f (explaining that "[t]he power to give interim instructions" is what

12

"distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents"); *Hollingsworth v. Perry*, 570 U.S. 693, 713 (2013) ("An essential element of agency is the principal's right to control the agent's actions." (internal quotation marks and citations omitted)). In determining whether an agency relationship exists, the question is "how much the agent 'retained control, or the right to control, the mode and manner of doing the work contracted for.'" *M.A.*, 425 F. Supp. 3d at 971–72 (quoting *Beddia v. Goodin*, 957 F.2d 254, 257 (6th Cir. 1992) (citation omitted)).

Generally, the existence and extent of the agency relationship is a question of fact that is better addressed later in the proceedings. *See Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 661 (6th Cir. 2005) ("Given that the existence of an agency relationship is a question of fact, rather than one of law, . . . the court should have denied [the defendant's] motion if any conflicting evidence of an agency relationship between plaintiffs and [the defendant] was presented."). Nonetheless, a plaintiff must still set forth plausible allegations that an agency relationship exists for her claim to survive a Rule 12(b)(6) motion. *See Foremost–McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 447 (D.C. Cir. 1990) ("It is . . . clear that the plaintiff bears the burden of asserting facts sufficient to withstand a motion to dismiss regarding the agency relationship."); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1258 (M.D. Fla. 2020) ("Plaintiffs . . . do not need to prove an agency relationship at this stage, but simply set forth plausible allegations that one exists . . . ." (citations omitted)).

While the mere existence of a franchise does not establish an agency relationship, the franchise model does not preclude wholesale franchisors from vicarious liability under an agency theory. *Bricker v. R & A Pizza, Inc.*, 804 F. Supp. 2d 615, 623 (S.D. Ohio 2011) ("[T]he existence

13

of a franchisor-franchisee relationship between persons does not in itself preclude the existence of a principal-agent relationship between them." (internal quotation marks and citations omitted)). To determine whether "a principal-agent relationship exists, courts consider the same factors 'as in the absence of a franchisor-franchisee relationship.'" *Bricker*, 804 F. Supp. 2d at 623 (quoting *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416 (S.D. Ohio 1986)). Accordingly, franchisor hotels may be held vicariously liable under an agency theory for the wrongful acts of their franchisees, or franchisees' employees, when the hotel franchisor has direct control of, or the right to control, the day-to-day operations of the franchisee. *See A.M.*, 728 F. Supp. 3d at 803.

Taken as true, the Complaint plausibly alleges an agency relationship between RRI Defendants and the Grand Rapids RRI or the Muskegon RRI. Plaintiff alleges that RRI Defendants exercised day-to-day control over the properties by: (1) controlling all details of the guest reservation, check-in, and payment processes through management of and control over all systems used for those processes; (2) controlling room prices, discounts, and reward programs; (3) requiring franchisees to use centralized property management systems for their operations; (4) collecting reservation, payment, and occupancy data through a fully integrated database maintained by RRI Defendants; (5) regularly inspecting RRI branded properties; (6) controlling all marketing and facility designs for RRI branded properties; (7) requiring use of standardized training methods for employees; (8) mandating specific training; and (9) providing benefits to employees of franchised properties; (10) adopting and enforcing detailed policies dictating the means and methods used for day-to-day operations; and (11) dictating, supervising, and overseeing policies and protocols regarding detecting and responding to human trafficking. (*See* ECF No. 1 ¶¶ 77–79, 97–103).

14

These allegations satisfy the pleading standards of Federal Rule of Civil Procedure 8 to demonstrate RRI Defendants' control over the Grand Rapids RRI and the Muskegon RRI for purposes of an agency relationship. *See Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194, 2020 WL 1244192, at *7–8 (S.D. Ohio Mar. 16, 2020) (finding allegations of "profit sharing, standardized training methods, building specifications, standardized rules of operation, regular inspection of the facility, and price fixing" sufficient to support agency relationship between franchisor and franchisee hotel); *A.B.*, 484 F. Supp. 3d at 940 (finding similar allegations sufficient to plead an agency relationship under federal common law but dismissing indirect liability claim on other grounds).

Plaintiff's allegations also satisfy the second requirement to succeed on her agency theory—that the Grand Rapids RRI and the Muskegon RRI themselves committed a wrong that can be imputed on RRI Defendants. *See A.M.*, 728 F. Supp. 3d at 804. This Court applies the three-pronged test established by 18 U.S.C. § 1595, and already used to assess RRI Defendants' direct liability, to the Grand Rapids RRI and the Muskegon RRI as well: (1) each of Grand Rapids RRI and Muskegon RRI must "knowingly benefit[], financially or by receiving anything of value"; (2) from participating in a venture; (3) that each of them "knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

First, Plaintiff alleges that the Grand Rapids RRI and the Muskegon RRI financially benefited from renting rooms to traffickers, therefore satisfying the first prong. (ECF No. 1 ¶¶ 96–97). As explained earlier, the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to satisfy the "knowing benefit" element. *See M.A.*, 425 F. Supp. 3d at 965 ("[T]he rental of a room constitutes a financial benefit from a relationship with the trafficker

15

sufficient to meet this element of the [section] 1595(a) standard."). Second, Plaintiff's allegations raise a plausible inference that the Grand Rapids RRI and the Muskegon RRI, along with RRI Defendants, participated in a hotel-operating commercial venture that profited from Plaintiff's sex trafficking. (*See* ECF No. 1 ¶ 99). Finally, the Complaint plausibly alleges that the Grand Rapids RRI and the Muskegon RRI had constructive knowledge that Plaintiff was being trafficked by observing red flags consistent with sex trafficking, including Plaintiff's bruising, demeanor, loud noises of abuse from the room, and repeated interactions with hotel staff. Because Plaintiff's allegations, viewed most favorably to her, support an agency relationship between RRI Defendants and the Grand Rapids RRI and the Muskegon RRI, and Plaintiff adequately alleges the operators' liability under the TVPRA's beneficiary theory, RRI Defendants' motion to dismiss the vicarious liability claim is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART**. (ECF No. 15). Specifically, Plaintiff's CAVRA claims are hereby **dismissed** as time-barred; Defendants' motion to dismiss is **denied** in all other respects. Additionally, Plaintiff's Motion to File a Sur-Reply (ECF No. 24) is **GRANTED.**

**IT IS SO ORDERED**.

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 24, 2025**

16