**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
|  | : |  |
|  | : | **Case Nos. 2:23-cv-04256; 2:23-cv-04258;** |
|  | : | **2:23-cv-04195; 2:24-cv-00389; 2:24-cv-01780;** |
|  | : | **2:24-cv-01823; 2:24-cv-02420; 2:24-cv-03076;** |
|  | : | **2:24-cv-03113; 2:24-cv-03919; 2:24-cv-03991;** |
| **IN RE HOTEL TVPRA LITIGATION** | : | **2:24-cv-04058; 2:24-cv-04211; 2:24-cv-04315;** |
|  | : | **2:24-cv-04316; 2:24-cv-04317; 2:24-cv-04318;** |
|  | : | **2:24-cv-04320; 2:24-cv-04061; 2:24-cv-04166;** |
|  | : | **2:24-cv-04319; 2:25-cv-00082; 2:25-cv-00083;** |
|  | : | **2:25-cv-00084; 2:25-cv-00090; 2:25-cv-00472;** |
|  | : |  |
|  | : | **Judge Algenon L. Marbley** |
|  | : |  |
|  | : | **Magistrate Judge Kimberly A. Jolson** |
|  | : |  |
|  | : |  |

**OPINION & ORDER**

This matter comes before the Court on Liberty Mutual Fire Insurance Company's Motions to Intervene in twenty-six cases, identified above.  For the reasons set forth below, Liberty Mutual's Motions are **DENIED**.

## I.   BACKGROUND

The instant cases arise under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, and the Child Abuse Victim's Rights Act ("CAVRA"), 18 U.S.C. § 2255.  They are brought by individual Plaintiffs, proceeding anonymously, who allege that they were the victims of sex trafficking at different hotels across the country,[1] including some that were owned, operated, or franchised by the Red Roof Inns hotel chain.  They seek to hold Defendants—

---

[1] The sex trafficking in these cases allegedly occurred at hotels in Mobile, Alabama; Tempe, Arizona; San Dimas, California; Newark, Delaware; Jacksonville and Tampa, Florida; Smyrna, Georgia; Indianapolis, Indiana; Paducah, Kentucky; Baton Rouge, Louisiana; Saugus, Massachusetts; Grand Rapids, Madison Heights, and Norton Shores, Michigan; St. Louis, Missouri; Canton, Columbus, Dayton, and Middleburg Heights, Ohio; Columbia and Greenville, South Carolina; Manassas and Virginia Beach, Virginia; and Seattle, Washington.

1

including a variety of entities associated with Red Roof Inns[2]—liable for financially benefitting from sex trafficking ventures that they knew, or should have known, were occurring at their hotels. Some Plaintiffs allege that they were underage when their trafficking occurred.[3]

Liberty Mutual Fire Insurance Company provides commercial insurance to certain Red Roof entities that are Defendants in these cases.  Those Red Roof Defendants requested coverage from Liberty Mutual for the Plaintiffs' claims in each action.  Liberty Mutual has now moved to intervene across these cases.  It seeks declaratory judgments regarding its obligations, if any, to defend or indemnify those Red Roof Defendants.  At present, Liberty Mutual is defending in some of these actions subject to a reservation of rights.[4]  In other actions, it is denying coverage.[5]  And in yet another action, it is declining to defend due to policy period expirations.[6]

Liberty Mutual argues that it has a right to intervene in these cases so that it can protect its direct pecuniary interests.  Alternatively, it argues that it should be granted permissive intervention as a matter of discretion.  All Motions to Intervene have been timely opposed by at least one party, and are now ripe for review.  For the following reasons, these Motions are denied.

## II.    STANDARD OF REVIEW

A party may intervene as a matter of right.  Federal Rule of Civil Procedure 24(a) mandates that courts "must permit anyone to intervene who":  (1) makes a "timely" motion; (2) "claims an interest relating to the property or transaction that is the subject of the action;" (3) "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to

---

[2] These entities include:  Red Roof Inns, Inc.; RRF Holding Company, LLC; Red Roof Franchising, LLC; RRI West Management, LLC; BW RRI II LLC; BW RRI IV LLC; FMW RRI Opco, LLC; FMW RRI II, LLC; R-Roof III, LLC; R-Roof V, LLC; RRI II, LLC; RRI III, LLC.
[3] *E.g.*, *A.H. v. Red Roof Inns, Inc.*, No. 2:24-cv-03113 (ECF No. 1 ¶ 29); *L.M.H. v. Red Roof Inns, Inc.*, No. 2:24-cv-01823 (ECF No. 1 ¶ 29).
[4] *E.g.*, Mot. to Intervene, *J.N.K. v. Red Roof Inns, Inc.*, No. 2:24-cv-00389 (ECF No. 57 at 3).
[5] *E.g.*, Mot. to Intervene, *T.D.W. v. Red Roof Inns, Inc.*, No. 2:24-cv-03991 (ECF No. 59 at 3).
[6] Mot. to Intervene, *A.D. v. Red Roof Franchising, LLC*, No. 2:25-cv-00090 (ECF No. 42 at 3–4).

2

protect its interest"; and (4) has interests that cannot be "adequately represent[ed]" by "existing parties." Fed. R. Civ. P. 24(a)(2); *see Grainger v. Ottawa Cnty.*, 90 F.4th 507, 513 (6th Cir. 2024) (citing *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2006) (characterizing the requirements of Rule 24(a)(2) as a four-factor test)).

A party may also request permissive intervention. Under Rule 24(b), courts "may permit anyone to intervene who" makes a "timely" motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Courts also consider undue delay and prejudice to the original parties, *id.* 24(b)(3), as well as any other relevant factors when evaluating permissive intervention. *Bell v. Kasich*, 2017 WL 3172778, at *5 (S.D. Ohio July 25, 2017). Other relevant factors can include the Rule 24(a)(2) intervention-as-of-right factors. *Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 759 (6th Cir. 2018).

### III.    LAW & ANALYSIS

#### A. Intervention as of Right

The right to intervene is construed broadly in favor of the movant, and if all four factors of Rule 24(a)(2) are established, "this generally favorable construction transforms into a mandatory allowance of intervention." *Estate of Lewis v. City of Columbus*, 158 F.4th 814, 822 (6th Cir. 2025).

This Court considers the second, third, and fourth mandatory intervention factors—focusing on the second and third factors, which are at the heart of Liberty Mutual's motions to intervene. Because none of these factors has been satisfied, and because all three factors are necessary prerequisites for it, this Court need not determine the timeliness of each individual motion across twenty-six different cases. *T.P. v. Red Roof Inns, Inc.*, 2023 WL 5723373, at *2 n.2

3

(S.D. Ohio Sept. 5, 2023) (Marbley, J.) ("[B]ecause this Court finds the Motion [to Intervene] fails for other reasons, it is not necessary to undergo analysis of [its] timeliness.").

### 1. Legal Interest

Begin with the second factor: Liberty Mutual's asserted interests in these cases. Liberty Mutual must raise a substantial legal interest in the subject matter of each case where it wants to intervene. While such an interest "is understood expansively," it still must be "'significantly protectable.'" *JobsOhio v. EmKey Energy, LLC*, 2025 WL 3484766, at *3 (S.D. Ohio Dec. 4, 2025) (Marbley, J.) (quoting *Grainger*, 90 F.4th at 516).

Liberty Mutual argues that it has direct pecuniary and substantial legal interests in the outcome of these cases, since the Red Roof Defendants it insured seek "coverage" for claims asserted against them.[7] The parties opposing intervention generally counter that Liberty Mutual either expressly reserves its rights to deny coverage to the Defendants or denies coverage. Thus, they say Liberty Mutual's interest in each case is contingent upon two separate questions: whether it is obligated to the Defendants under its insurance policies, and whether the Defendants are liable under each Plaintiff's TVPRA allegations.[8] They point out that this Court has routinely denied mandatory intervention under similar circumstances in related sex trafficking cases.[9]

Those prior decisions are dispositive in adjudicating the instant motions. As this Court has found in the past, Liberty Mutual's interests "are not substantial," but rather "are merely contingent" because its stake in each case is dependent on a determination of hotel liability and the adjudication of Liberty Mutual's obligations under the insurance contracts. *T.P.*, 2023 WL 5723373, at *2 (denying Liberty Mutual's motion to intervene in another sex trafficking case);

---

[7] *E.g.*, Mot. to Intervene, *J.N.K.*, No. 2:24-cv-00389 (ECF No. 57 at 4).
[8] *E.g.*, Opposition, *J.N.K.*, No. 2:24-cv-00389 (ECF No. 59 at 8–9); Opposition, *T.D.W.*, No. 2:24-cv-03991 (ECF No. 66 at 8–9).
[9] *E.g.*, Opposition, *J.N.K.*, No. 2:24-cv-00389 (ECF No. 59 at 3–4, 8–9).

*accord M.A. v. Wyndham Hotels & Resorts, Inc.*, 2022 WL 622124, at *2 (S.D. Ohio Mar. 3, 2022) (Marbley, J.) ("[P]otential coverage under various insurance policies is irrelevant to Plaintiff's TVPRA claims against Defendants."); *see also, e.g.*, *R.A. v. Best W. Int'l, Inc.*, 2025 WL 961501, at *9 (S.D. Ohio Mar. 31, 2025) (Marbley, J.); *S.R. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 2795784, at *2 (S.D. Ohio May 31, 2024) (Marbley, J.). The same holds true here. Liberty Mutual's asserted interests are contingent, not substantial. Whether Liberty Mutual has any interest at stake will depend upon two separate findings: (1) that Liberty Mutual's policyholders were liable to Plaintiffs; (2) and that Liberty Mutual had obligations for such liabilities under each pertinent insurance contract. This form of contingent liability is not sufficiently direct and immediate to justify intervention as of right. *M.A.*, 2022 WL 622124, at 2–3. These underlying lawsuits concern violations of the TVPRA, "not the respective rights and obligations of an insured and his insurers under their insurance policy." *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 640 (1st Cir. 1989).

Liberty Mutual's failure to allege a direct and substantial interest in the subject of the litigation is "fatal" to Liberty Mutual's claims for intervention as of right. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 2019 WL 6698365, at *3 (S.D. Ohio Dec. 9, 2019) (Marbley, J.). But even were it not fatal, Liberty Mutual's motions fail for other independent reasons as well.

### 2. Impairment of Legal Interest

Consider the third factor: whether Liberty Mutual would be impeded in its ability to protect its interests absent intervention. Liberty Mutual argues that if it failed to move to intervene in any case, the Defendants in that case could argue that it was collaterally estopped from later arguing against the coverage of the relevant insurance policies.[10] The parties opposing intervention

---

[10] *E.g.*, Mot. to Intervene, *J.N.K.*, No. 2:24-cv-00389 (ECF No. 57 at 5) (citing *Gehm v. Timberline Post & Frame*, 2007-Ohio-607 (Ohio 2007)).

generally counter that Liberty Mutual does not need to intervene successfully in any particular suit to protect its interests.[11]

Here, both parties are essentially correct. Liberty Mutual must move to intervene in order to protect its rights, but it does not actually need to succeed in intervening. This Court has previously recognized that moving to intervene is sufficient for an insurance company to avoid the later snare of collateral estoppel. *S.R.*, 2024 WL 2795784, at *2. The reason is simple. Under Ohio law, "[w]hen a party has sought and been denied intervention, collateral estoppel will not prohibit future litigation of similar issues." *Gehm v. Timberline Post & Frame*, 2007-Ohio-607 ¶ 31 (Ohio 2007).

Thus, Liberty Mutual's interests have been preserved by the instant motions, and it remains free to pursue separate actions against the Red Roof Defendants regarding insurance obligations. This too is fatal for mandatory intervention. Where a potential intervenor could press its claims in separate litigation, its interests are not impaired absent intervention. *JobsOhio*, 2025 WL 3484766, at *4–5 (citing *Grainger*, 90 F.4th at 516). Liberty Mutual will not be impeded from protecting its rights because it can still pursue a separate declaratory action. Put differently, Liberty Mutual has alternative recourse. *M.A.*, 2022 WL 622124, at *3.

### 3. Adequacy of Legal Representation

Last, turn to the fourth factor: are Liberty Mutual's legal interests adequately represented in these actions? If Liberty Mutual and a party share the same ultimate objective, adequate representation is presumed. Liberty Mutual then has a "minimal" burden of showing inadequate representation if it can demonstrate that representation *may* be inadequate. *Estate of Lewis*, 158 F.4th at 827. Liberty Mutual's argument is that the Red Roof Defendants' "principal interest is to

---

[11] *E.g.*, Opposition, *J.N.K.*, No. 2:24-cv-00389 (ECF No. 59 at 9–10).

obtain insurance coverage for their alleged acts and omissions, and to have funds available through insurance to pay any damages awarded if they are found to be liable."[12] The parties opposing intervention generally counter that Liberty Mutual seeks the same outcome as the Red Roof Defendants: a favorable judgment obviating any need for insurance indemnifications.[13]

This Court appreciates Liberty Mutual's concerns. But Liberty Mutual's argument that the *principal* goal for the Red Roof Defendants—who are sued for their role in alleged sex trafficking—is to obtain insurance coverage and *not* to defend against the lawsuits misses the mark. Undoubtedly, the Red Roof Defendants have strong interests in vigorously defending themselves, and disputes about insurance coverage would not change their motivation to avoid liability. *E.g.*, *S.R.*, 2024 WL 2795784, at *3; *S.C. v. Wyndham Hotels & Resorts, Inc.*, 2023 WL 6603213, at *1 (N.D. Ohio Oct. 10, 2023) (Gwin, J.) ("[T]he Red Roof Defendants and Liberty Mutual share the same interest in avoiding liability to Plaintiff."); *accord S.C. v. Wyndham Hotels & Resorts, Inc.*, 2023 WL 4879941, at *1 (N.D. Ohio Aug. 1, 2023) (Gwin, J.) (similar). Thus, while Liberty Mutual's interests may be opposed to the interests of the Red Roof Defendants *with respect to any nascent insurance dispute*, they are decidedly *not* opposed with respect to issues of liability to the Plaintiffs. *See Jansen v. City of Cincinnati*, 904 F.2d 336, 343 (6th Cir. 1990) (inadequacy is not necessarily shown by variations in interest if the sought outcome is the same); *compare JobsOhio*, 2025 WL 3484766, at *4 (finding interests opposed and representation inadequate where plaintiff and intervenor each claimed entitlement to defendant's funds).

In sum, Liberty Mutual has not established its right to intervene because it has not demonstrated that, under the second, third, and forth factors, it has a substantial legal interest in the subject matter of these cases, that any of its purported legal interests would be impaired absent

---

[12] *E.g.*, Mot. to Intervene, *J.N.K.*, No. 2:24-cv-00389 (ECF No. 57 at 5).
[13] *E.g.*, Opposition, *J.N.K.*, No. 2:24-cv-00389 (ECF No. 59 at 10–11).

the requested interventions, and that its interests would not be adequately represented by the existing parties. Since these factors are not met, Liberty Mutual is not entitled to intervene as a matter of right, *see M.A.*, 2022 WL 622124, at \*2 (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)), and this Court need not undertake a laborious, case-by-case evaluation of the timeliness of each of Liberty Mutual's twenty-six motions. *See R.A.*, 2025 WL 961502, at \*9 (declining to reach remaining factors where mandatory intervention failed for lack of one factor).

## B. Permissive Intervention

Liberty Mutual alternatively argues that it is entitled to permissive intervention under Rule 24(b). Recall that district courts have discretion to grant permissive intervention where: (1) the motion is timely; and (2) the movant shows that it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In such instances, courts must also consider whether such intervention would unduly delay or prejudice the adjudication of the original parties' rights. *Id.* 24(b)(3). Though this Court has already concluded that Liberty Mutual lacks the right to intervene under Rule 24(a)(2), *see* Section III(A), *supra*, it may still consider the previous intervention-as-of-right factors, or other relevant factors, in evaluating whether to allow Liberty Mutual to intervene. *See Bay Mills*, 720 F. App'x at 759; *Bell*, 2017 WL 3172778, at \*5.

Liberty Mutual generally claims that its motions are timely and asserts, without elaboration, that they "allege[] at least one common question of law or fact" with the underlying actions, arguing that the underlying facts are "relevant to questions of whether . . . claims . . . fall within coverage or exclusions to coverage under [Liberty Mutual's] Policies."[14] The parties opposing intervention generally counter that Liberty Mutual seeks to bring claims raising separate

---

[14] *E.g.*, Mot. to Intervene, *J.N.K.*, No. 2:24-cv-00389 (ECF No. 57 at 5–6).

questions, involving separate facts, and governed by contract law—not the laws against sex trafficking. And they point to this Court's previous holdings that other, similar insurer motions did not raise sufficiently similar questions of law or fact, but instead risked delay and prejudice to the original parties by introducing complex issues of insurance coverage.[15]

As with its intervention-as-of-right analysis, this Court will not consider timeliness of the various motions, because it will not permit intervention for several separate reasons. The chief reason is that Liberty Mutual's motions fail to articulate common questions of law or fact connecting their insurance claims with the Plaintiffs' TVPRA (and CAVRA) claims, and thus permissive intervention is not warranted. *See R.A.*, 2025 WL 961501, at *10 (collecting cases). Although Liberty Mutual is right that the underlying facts of these cases are relevant to questions of insurance coverage liability, that is only insofar as liability implicates its coverage obligations, which are "contingent" on Plaintiffs' successes and require inquiries into insurance policy language that are "wholly separate" from the sex trafficking claims in the main actions. *S.R.*, 2024 WL 2795784, at *3.

Moreover, any intervention would risk delay and prejudice to the original parties by injecting complex issues of insurance coverage into these cases. *R.A.*, 2025 WL 961501, at *10; *S.R.*, 2024 WL 2795784, at *3; *accord S.C.*, 2023 WL 4879941, at *1. Permissive intervention here would "drag substantive issues of insurance law" into cases focusing on the statutory liabilities of hotels for alleged sex trafficking. *Travelers Indem. Co.*, 884 F.2d at 640. Allowing Liberty Mutual to intervene to protect its contingent interests could "interfere with and in effect control the defense" of the Red Roof Defendants, and thus "unfairly restrict" them. *Id.* at 639. It could also divert time and attention away from Plaintiffs' important claims—that the Red Roof

---

[15] *E.g.*, Opposition, *J.N.K.*, No. 2:24-cv-00389 (ECF No. 59 at 11–13).

Defendants profited financially from sex trafficking that they knew or should have known were occurring at their hotels—to matters of insurance law and contract interpretation.  Accordingly, this Court declines to exercise its discretion to grant Liberty Mutual permissive intervention.

## IV.    CONCLUSION

Liberty Mutual Fire Insurance Company's interests have been preserved by filing the instant motions.  For the foregoing reasons, Liberty Mutual's Motions to Intervene are **DENIED** in the following cases:

*D.E.G. v. Red Roof Inns, Inc.*, No. 2:23-cv-04256 (ECF No. 74)
*C.M.G. v. Red Roof Inns, Inc.*, No. 2:23-cv-04258 (ECF No. 64)
*A.M.G. v. Red Roof Inns, Inc.*, No. 2:23-cv-04195 (ECF No. 93)
*J.N.K. v. Red Roof Inns, Inc.*, No. 2:24-cv-00389 (ECF No. 57)
*S.N.S. v. Red Roof Inns, Inc.*, No. 2:24-cv-01780 (ECF No. 80)
*L.M.H. v. Red Roof Inns, Inc.*, No. 2:24-cv-01823 (ECF No. 44)
*T.L.B. v. Red Roof Inns, Inc.*, No. 2:24-cv-02420 (ECF No. 58)
*A.N.S. v. Red Roof Inns, Inc.*, No. 2:24-cv-03076 (ECF No. 52)
*A.H. v. Red Roof Inns, Inc.*, No. 2:24-cv-03113 (ECF No. 54)
*H.M.L. v. Red Roof Inns, Inc.*, No. 2:24-cv-03919 (ECF No. 68)
*T.D.W. v. Red Roof Inns, Inc.*, No. 2:24-cv-03991 (ECF No. 59)
*B.W. v. Red Roof Inns, Inc.*, No. 2:24-cv-04058 (ECF No. 31)
*R.R.G. v. Red Roof Inns, Inc.*, No. 2:24-cv-04211 (ECF No. 28)
*S.B.C. v. Red Roof Inns, Inc.*, No. 2:24-cv-04315 (ECF No. 34)
*K.R.A. v. Red Roof Inns, Inc.*, No. 2:24-cv-04316 (ECF No. 37)
*P.T.L. v. Red Roof Inns, Inc.*, No. 2:24-cv-04317 (ECF No. 58)
*J.M.M. v. Red Roof Inns, Inc.*, No. 2:24-cv-04318 (ECF No. 35)
*Z.D.Q. v. Red Roof Inns, Inc.*, No. 2:24-cv-04320 (ECF No. 66)
*A.E.W. v. Red Roof Inns, Inc.*, No. 2:24-cv-04061 (ECF No. 45)
*A.W.M. v. Red Roof Inns, Inc.*, No. 2:24-cv-04166 (ECF No. 32)
*N.A.O. v. Red Roof Inns, Inc.*, No. 2:24-cv-04319 (ECF No. 70)
*A.A.G. v. Red Roof Inns, Inc.*, No. 2:25-cv-00082 (ECF No. 42)
*J.K.W. v. Red Roof Inns, Inc.*, No. 2:25-cv-00083 (ECF No. 46)
*K.R.E. v. Red Roof Inns, Inc.*, No. 2:25-cv-00084 (ECF No. 41)
*A.D. v. Red Roof Franchising, LLC*, No. 2:25-cv-00090 (ECF No. 42)
*A.M.H. v. Best W. Int'l Inc.*, No. 2:25-cv-00472 (ECF No. 65)

The Clerk of Court is **DIRECTED** to file this Opinion & Order **ONLY** in the above-listed cases.

    **IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  March 23, 2026**

11